```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
IRENE VALENTI and JOSEPH VALENTI,

                Plaintiffs,
                                              04 Civ. 8895 (RWS)
     - against -
                                              O P I N I O N
NORWEGIAN CRUISE LINE,

                Defendant.
------------------------------------X
```

A P P E A R A N C E S:

    FLOYD G. COTTRELL, P.A.
    Attorneys for Plaintiffs
    5 West Main Street, Suite 201
    Elmsford, NY 10523
    By: JEFFREY MARDER, ESQ.
        Of Counsel

    LAMBOS AND JUNGE
    Attorneys for Defendant
    29 Broadway
    New York, NY 10006
    By: PETER A. JUNGE, ESQ.
        Of Counsel

**Sweet, D.J.,**

Defendant NCL (Bahamas) Ltd., sued in this action as "Norwegian Cruise Line" ("NCL"), has moved pursuant to Rule 12(b) and 12(c),[1] Fed. R. Civ. P., to dismiss the complaint of plaintiffs Irene and Joseph Valenti (the "Valentis") based upon the forum selection clause contained in the ticket purchased by the Valentis for a cruise on the Norwegian Dawn. For the reasons set forth below, the motion is granted.

**Prior Proceedings**

On November 10, 2004, the Valentis filed a complaint alleging that on November 27, 2003, Irene Valenti suffered personal injuries arising out of the negligence of the crew of the NCL ship. More specifically, it is alleged that Irene Valenti "was caused to sustain injury as a result of a negligent condition then and there existing on the steps leading to the dining room." (Compl. ¶ 6.)

The instant motion was filed on January 6, 2005. It was heard and marked fully submitted on January 26, 2005.

---

[1] NCL's failure to specify the exact grounds for its motion to dismiss is a result of the fact that the Second Circuit has not resolved the issue of "the proper procedural mechanism to request dismissal of a suit based upon a valid forum selection clause." New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 28 (2d Cir. 1997); Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352, 356 (S.D.N.Y. 2004).

**The Facts**

The following facts are drawn from the complaint and the affidavits of the parties. It is well established that when evaluating a motion to dismiss a complaint based on the existence of a forum selection clause, the Court may consider materials outside the pleadings. See New Moon Shipping Co., Ltd. v. MAN B & W Diesel AG, 121 F.3d 24, 30 (2d Cir. 1997); Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352, 357 (S.D.N.Y. 2004) (stating that in making its determination concerning the application of a forum selection clause, the court may consider the parties' supporting affidavits and declarations but it may resolve a disputed fact in a manner adverse to the plaintiff only after an evidentiary hearing); J.B. Harris, Inc. v. Razei Bar Indus., Ltd., 37 F. Supp. 2d 186, 188-89 (E.D.N.Y. 1998), aff'd 181 F.3d 82 (2d Cir. 1999).

NCL maintains its principal place of business and corporate headquarters at Airport Corporate Center, 7665 Corporate Center Drive, Miami, Florida 33126. (See Declaration of Jane E. Kilgour of January 5, 2005 ("Kilgour Decl."), at ¶ 2.)

The ticket issued by NCL has two components. The top portion of the ticket ("the Lifted Ticket") is perforated so that it can be removed by NCL personnel at the time that the passenger first boards the ship. (See id. ¶ 5.) The bottom portion of the ticket is

retained by the passenger. (See id.) This retained portion of the ticket contains the 28-paragraph Contract of Passage. (See id.)

The Lifted Ticket is marked "Cruise Ticket/Do Not Separate Until Pier Check-in" in its upper right corner and "To Be Presented for Passage" on its bottom edge. (See id. Ex. A.) The Lifted Ticket reveals that NCL issued the Lifted Ticket and Contract of Passage to the Valentis in Miami on October 24, 2003 for a round-trip cruise from New York City on the cruise ship <u>Norwegian Dawn</u> which commenced on November 23, 2003. (See id. Ex. B.)

The following legend appears on both the Lifted Ticket and also on the portion of the ticket retained by the Valentis after boarding:

> IMPORTANT NOTICE
>
> The Passenger's attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.

(Id. Ex. A.) This legend is printed in white lettering against a dark blue background with a bold blue margin. (See id. ¶ 7.)

At the top of the Contract of Passage, the following legend is printed in bold-face type in a text box with a broad border:

Passengers are advised to read the terms and conditions of the Passenger Ticket Contract set forth below. Acceptance of this Passenger Ticket Contract by Passenger shall constitute the agreement of Passenger to these Terms and Conditions.

(Id. Ex. A at 1.)

Paragraph 1 of the Contract of Passage states as follows:

This passenger ticket contract (hereafter "Contract") constitutes a contract of passage between the Carrier, Norwegian Cruise Line Limited d/b/a Norwegian Cruise Line (hereafter referred to as "Carrier"), and the passenger or purchaser (whether or not signed by or on his behalf). All the terms and provisions of all sides of this Contract, including all of the following matter printed below, are a part of this Contract to which the passenger and/or purchaser, both on his/her behalf and on behalf of any other person or persons, including children, for whom this ticket is purchased, acknowledge and agree to be bound thereby by accepting this Contract or transportation from the Carrier. The fare includes only the transportation as specified herein, full board, ordinary ship's food, but does not include spirits, wine, beer, sodas or mineral waters. This Contract shall be the entire agreement between the parties and supersedes all representations or conditions contained in Carrier's advertisements, notices, brochures or other literature and all promises and agreements made or claimed to have been made to or with the passenger or anyone representing him by any party.

(Id.)

Paragraph 28 of the Contract of Passage provides in pertinent part as follows:

5

> [A]ny and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A.

(Id. Ex. A at 2.)

Irene Valenti has stated that prior to purchasing the NCL tickets, she obtained and reviewed an NCL brochure that stated that a purchaser would forfeit 50% of the purchase price if the trip was cancelled within 29 days prior to the sailing date. (See Affidavit of Irene Valenti ("Valenti Aff.") sworn to January 14, 2005, at ¶ 6.)

The January 19, 2005 supplemental declaration of NCL's Jane Kilgour states as follows:

> NCL's standing policy is to provide full refunds to passengers who object to the terms of the contract of passage within a reasonable time after receiving their ticket contracts.
>
> * * *
>
> Plaintiffs here did not reject the ticket contract even though they had the tickets at their home for almost a month before their cruise.
>
> As such, although Plaintiffs received their tickets within a period which carried a cancellation penalty, they could have received a full refund if they had rejected the terms and conditions of the contract of passage within a reasonable time.

(Supplemental Declaration of Jane E, Kilgour of January 19, 2005 ("Kilgour Supp. Decl."), at 1-2.)

**Discussion**

### A. Choice of Law

In this case, the source of substantive law is federal maritime law. See, e.g., Vavoules v. Kloster Cruise Ltd., 822 F. Supp. 979, 982 (E.D.N.Y. 1993) (stating that "[i]t is now settled that a passenger cruise ticket is a maritime contract and the limitations law to be applied in a personal injury action is federal maritime law") (citing Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 590 (1991)). It is well-settled that in federal maritime law, the contract of passage governs the rights and liabilities between passengers and an ocean carrier. See, e.g., The Majestic, 166 U.S. 375, 377-78 (1897); The Moses Taylor, 71 U.S. (4 Wall.) 411, 427 (1886).

The fact that the Valentis have asserted that the Court has subject matter jurisdiction pursuant to the diversity statute, 28 U.S.C. § 1332, is irrelevant to this choice of law analysis. See, e.g., Lurie v. Norwegian Cruise Lines, Ltd., 305 F. Supp. 2d 352, 356 (S.D.N.Y. 2004). The Lurie Court stated:

> The fact that plaintiffs have invoked the Court's diversity jurisdiction in their complaint does not change the analysis; regardless of the choice of forum or basis of

> subject matter jurisdiction, disputes relating to maritime
> contracts and injuries sustained aboard a ship are governed
> by federal maritime law.

Id.

Based on the foregoing, it is determined that this action brought pursuant to NCL's duly issued Contract of Passage should be treated under the general maritime law of the United States.

**B.     The Forum Selection Clause Is Enforceable**

A forum-selection clause in a maritime contract is prima facie valid unless there is some independent justification for refusing to enforce it.  M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 10 (1972); see also Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 589 (1991).  In Shute, the Supreme Court held that a forum selection clause in a passenger ticket contract is within the meaning of 46 App. U.S.C.A. § 183c, which outlines permissive limitations on passengers' rights.  Shute, 499 U.S. at 596.

The Shute court held that a forum selection clause in a form passage contract is enforceable if: (1) it is "reasonably communicated" by the carrier to the passenger, see id. at 590, and (2) it stands up to judicial scrutiny as to reasonableness and fundamental fairness. See id. at 593-95.

### 1. The Forum Selection Clause Was Reasonably Communicated To The Valentis

The Second Circuit has held that a contractual term in a passage contract is reasonably communicated where:

> (1) ... the physical characteristics of the ticket itself reasonably communicate[] to the passenger the existence therein of important terms and conditions that affected the passenger's legal rights, and (2) ... the circumstances surrounding the passenger's purchase and subsequent retention of the ticket/contract permitted the passenger to become meaningfully informed of the contractual terms at stake.

Ward v. Cross Sound Ferry, 273 F.3d 520, 523 (2d Cir. 2001) (internal quotations omitted); see also Lousararian v. Royal Caribbean Corp., 951 F.2d 7, 8-9 (1st Cir. 1991); Natale v. Regency Maritime Corp., No. 94 Civ. 0256 (LAP), 1995 WL 117611, at *2-3 (S.D.N.Y. Mar. 17, 1995); Boyles v. Cunard Line Ltd., No. 93 Civ. 3472 (CES) 1994 WL 449251, at *2-4 (S.D.N.Y. Jan. 11, 1994).

The Ward court determined that a contractual term was reasonably communicated where: (1) the ticket and passage contract was received by the passenger at least several days before the trip began and (2) the passenger was permitted to retain the passage contract after boarding. Ward, 273 F.3d at 526.

Here, it is undisputed that the ticket was received shortly after October 24, 2003, and the trip commenced on November 23, 2003.

9

Moreover, it is undisputed that the Lifted Ticket and the Contract of Passage carried multiple legends alerting the passenger to the fact that the terms and conditions contained in the Contract of Passage affected the passenger's legal rights. Based on the foregoing, the forum selection clause was reasonably communicated to the Valentis.

### 2. **The Forum Selection Clause Was Fair and Reasonable**

The Second Circuit has held that a forum selection clause does not violate notions of fundamental fairness absent a showing of fraud, overreaching, or an intent on the part of the carrier to "'discourag[e] cruise passengers from pursuing legitimate claims.'" Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 10 (2d Cir. 1995) (quoting Shute, 499 U.S. at 595).[2]

The same NCL ticket contract and forum selection clause involved in the present case was judged to be fair and reasonable by the Lurie court, which stated:

> The forum selection clause at issue here also withstands the reasonableness and fairness analysis established by [the Supreme Court]. NCL is a large cruise line with its principle place of business and corporate headquarters in Miami, Florida. Thus, the factors addressed by the Court

---

[2] The Shute court and others have held that Florida is not a "remote alien forum" in which to require the out-of-state plaintiffs to litigate. Shute, 499 U.S. at 595.; see also Melnik v. Cunard Line Ltd., 875 F. Supp. 103, 107 (N.D.N.Y. 1994); Marek v. Marpan Two, Inc., 817 F.2d 242, 245 (3d Cir. 1987).

> in Shute in determining that the forum selection clause
> there was reasonable are equally applicable to the clause
> in NCL's form contract.  Furthermore, plaintiffs' have not
> made the strong showing of inconvenience necessary to avoid
> enforcement of the clause; nor is there evidence that NCL
> included the clause in the passenger ticket contract in bad
> faith or through fraud or overreaching.

Lurie, 305 F. Supp. 2d at 361.

The Valentis have argued that because they could not refuse the passenger ticket contract without forfeiting 50% of their payment, the forum selection clause is unfair and unreasonable.  A minority of courts have accepted this argument.  See, e.g., Corna v. American Hawaii Cruises, Inc. 794 F. Supp. 1005, 1011 (D. Haw. 1992)(holding that a forum selection clause contained in a passage contract was not fair and reasonable because "plaintiffs did not have an option to reject the cruise contract without forfeiting several thousands of dollars").  However, the majority rule among those courts that have addressed the question is that "[o]nce the plaintiffs (a) received the tickets in time to read them, and (b) accepted the terms of those tickets by going on the cruise, they are bound by the terms contained therein."  Natale, 1995 WL 117611 at *3.

In Lurie, there was evidence presented that neither plaintiffs nor their travel agent were aware of NCL's standing policy that would have allowed them to reject the contract within a cancellation fee period and receive a full refund.  See Lurie, 305 F. Supp. 2d at 358-59.  Nevertheless, the court enforced the forum

11

**Conclusion**

The NCL forum selection clause is found to be valid and enforceable. Therefore, the action is dismissed in its entirety.

It is so ordered.

New York, NY
April 2-/, 2005

ROBERT W. SWEET
U.S.D.J.